Wireless. Transverse's case here reminds me of trying to put an overly ripe raspberry into the slot of a parking meter. It doesn't work, and it makes a mess. What we have here is the second trip to this court seeking to reverse and render what is now a $1.7 million judgment in favor of Transverse that needs to be rendered for Iowa Wireless because there's absolutely no evidence in the record that supports any amount of reliance damages. We also ask the court— If we had a reverse on reliance, since there was an election of remedies, wouldn't we have to send it back and let them try to prove up the lost profits with the smaller time frame consistent with our prior opinion? No, sir. In fact, it was sent back before, and they actually declined to reopen the record. Transverse declined to reopen the record. Because they elected the reliance remedy. But if we were to say that's not a supportable award, you're saying they wouldn't get it to go back and elect a different remedy? No, sir. They don't get to go back again to elect a different remedy. What's your authority for that? Well, the court's already found the district court threw out other damages awarded. This court threw out the lost profits. Well, so the time frame was wrong. It should have been just two years. Right, but they had their chance to prove it all to begin with, and they didn't prove any of their reliance damages. In fact, this court repeatedly said, questioned whether there were any damages proved at all. And now it's narrowed down to even their nondisclosure claim is narrowed to whatever the course of proceedings between the parties was. I think there was a case from our circuit a couple years ago, Malvino, that says if a party elects one of two remedies and there's a problem with that on appeal, they can go back and elect the other one. But go on with your other argument, because you've got a lot to cover. Well, our view of that is they've already had that chance to do that and declined to open the record to introduce any more evidence on any aspect of damages and should not be given yet another opportunity to do so. We also asked the court to hold that Iowa Wireless prevailed on the Texas trade secret Texas Theft Liability Act, TTLA, and to order the district court to give Iowa Wireless our costs on the supersedious bond. Costs and fees are mandatory when you prevail on the TTLA, and we should get those under that as well. And we asked that all of their cross-appeal claims be denied. They proved nothing that would constitute a trade secret in any way, shape, or form. That finding is actually inherent in this court's prior decision. It was transverse that bifurcated the view of the nondisclosure agreement pursuant to which any business information was decided separately from the course of the party's dealings. And the only finding this court made in respect to the course of the party's dealings was that that was protected under the extremely broad nondisclosure agreement. And that's not anything that gives rise to trade secrets or conversion claims. So, assuming that we agree with you on the TTLA, I'm not foreshadowing, just posing a question. Do we need to reverse and render on the TTLA claim, or do we just, is there just a take nothing on the other sides? Do you need to prevail, or do they just need to lose? I think we need an affirmative finding that we prevailed, excuse me, at this point, Your Honor, because of so many little pieces and parts in this case, and the problems that it's had in the court below, and the unusual procedures that have been followed, and all the complications. Okay, and then do you have to remand, then, for the awarding of the attorney's fees? Yes, Your Honor. Because we can't just render those. Correct. It's not in the record yet. Correct. The attorney's fees and the costs are still awaiting resolution in the district court. There'd be a big segregation issue on fees, right? Because under Texas law, you only get the fees that can be attributed to the work on the TTLA part of the case. Correct, Your Honor. You don't have a body of law on that. Correct. And we also need a holding that Iowa law applies to the supply contract. We raised that in the district court. It's before this court now, and that is also relevant to the attorney's fee issue. Did you argue to our panel before that Iowa law definitely applied? Because didn't we just say it didn't matter? The opinion left that issue open. Yes. That's what the opinion did. I'm wondering whether it was argued to us that Iowa... We did continually preserve that argument. We pled it, and we argued it. I think the way the issues were raised then, it didn't particularly matter, because we agreed on the damages part that Texas and Iowa law were essentially the same, and that's what the court's decision held, that for purposes of those issues, you didn't have to decide that. Can you tell me where it was preserved? I know we pled it. I believe we may have even raised it on rehearing. I will have to get you the official sites for that, if I might supplement the argument just with an answer to that question. Okay. Go ahead and proceed. So with respect to the reliance damages that have to be set aside, that is because they were being much less foreseeability of any damages that would have had to have been foreseeable at the time the contract was entered. There was no way anyone could foresee that they were going to abandon the basis for the software that they showed us, and then try to reverse engineer the OpenTAP software themselves. That was something that never happened or succeeded. In fact, even in 2011, I think it was, when Transverse Employees Cattle and Howitt left the company, there was still no functioning bleep system, and that was more than a year after this contract ended and the relationship between the parties ended. They simply never made it happen after they abandoned the OpenTAP's basis that they had On top of that, they've had nothing but losses. Their own testimony was they'd lost over $4 million a year. Those were their minimum losses. By 2012, they had lost $26 million. Even on any reliance measure of damages, you back out losses, and their losses far exceeded and have continued to exceed any amount of reliance damages that they could possibly come up with. The only testimony on reliance damages or any other damages is behind our record excerpt tab number 26. There was only one page of testimony by Mr. Martinez, the expert, whose testimony this court rejected on every other issue, and he just said that they had spent over $3 million on the process. They made no effort to disentangle the expenses related to recreating the OpenTAP software from their working on our particular contract and customizing it for us. They could never customize it for us because they never got the software built to begin with to run any of the billing system, and the evidence in the record is irrefutable on that point. Where does the 1.7 come from? That's a good question, Your Honor, because their expert even said he got it down to 2.2. There is a number in the record of 1.7 for what Iowa Wireless, I think, paid IDI to create the system, but that's obviously not a function of them, of Transverse, relying on our contract to do anything or anything under any case I've ever seen that would constitute a measure of damages in this situation, but it's not even from their expert testimony. From what I can tell, the only time 1.7 comes up, it sounds like they're talking about the profits they did, or rather, the fact that they didn't profit during the first two years, that they lost 1.7. They would have lost 1.7. In any event, this is a lost profits discussion. It's a negative lost profits discussion. Right. It's a lost profits discussion, not a reliance discussion. Exactly. Is that your point? Yes. If the district court . . . this is a hypothetical question. Assuming that the district court was in error in thinking that the reliance issue had already been decided by our panel, should it be remanded to say, we didn't actually decide whether the causation established it, and let the district court explain why it's proven, and then also what the damages are, based upon the evidence in the record as it is? On the state of this record, given the fact that transverse had an opportunity to reopen . . . the district court gave them an opportunity to reopen it when it went back down the prior time, and they declined to do that. The fact that there's no foreseeability for reliance damages, there's no causation for reliance damages, I don't see any . . . I know of no decision that authorizes them to start over at this point on reliance damages. I don't mean opening up the record, but looking at the current record and seeing whether . . . going through each of these issues, because I don't know that the district court has analyzed causation and foreseeability. In fact, I think the district court, from what I understand, did not analyze those things. He sort of implies in his decision that he went back and looked at the evidence and found it sufficient, but of course he doesn't . . . there's no record citation to any evidence in his decision about that. I thought it says that we had already decided that they were entitled . . . He sort of assumed that, but at one point . . . and they certainly argued that. I mean, that's kind of been their whole approach to it, that you already decided it all. There are already trade secrets. There's already reliance damages, and all they had to do was elect. But at one point in his opinion, he makes reference to having . . . kind of a vague reference to having looked at the evidence and decided it. He did not address foreseeability or causation, but those are legal issues that this court can and, we submit, should decide at this point. What's the cleanest way to decide the reliance issue? The cleanest way to decide it is to hold that there was no evidence of reliance damages, I think. No evidence? There's not a single document in the record. There are no timesheets of employees. We don't even know how many employees there were. We don't know who was working on what. There was no disentangling of the recreating the open taps from what they did for iWireless. There is just the statement by the expert, Expert Martinez, that they spent over $3 million on it. He then backs out the $450-some-thousand that iWireless paid, transverse, for absolutely nothing. And that gets it down to roughly 2.5-something. And then he discounts it 14% because that's how much they said they used of BLEEP in their whole new track system. And that gets it down to 2.2. But that is not the objective facts, figures, or data that anybody needs in a record to substantiate any form of damages, reliance or otherwise, not to mention the failure to bifurcate and disentangle what they were going to spend anyway. And not to mention their prohibitive losses totaling $26 million by 2012, completely unrelated to us. Assuming, arguendo, that I'm going to ask you the opposite question, that our opinion could be read that we were saying there were some reliance damages, and that it was only an election decision being remanded, what's the cleanest way to resolve the case? Well, given the state of the record, there's simply no legal or factual basis to award reliance damages here. I take it opposing counsel says that this court previously said, quote, this is a quintessential case for reliance damages. I take it your position is- Well, contemplating- Implicit that you do still have to prove reliance damages. Correct, yes. A finding even of liability does not equate to a finding of damages. I lost a case in this court a long time ago, very painfully on that issue. So yes, I mean, the availability of a remedy certainly doesn't prove entitlement to it. And yes, this might have been a quintessential case for damages had they proved any, and had there been foreseeability, etc., etc., etc. That's the right measure of damages. Correct. That is the right- What happened to them. Yes. And that's the, they didn't even argue for that as a measure of damages, but it's the only other mention of any kind of damages in the record whatsoever that hasn't been rejected outright already on sufficiency. If the court has no further questions, I reserve time for rebuttal. May it please the court, my name is Raymond White, I'm trans versus counsel. Jim Messer, trans versus CEO, is with me in the audience. I was going to address our appellate points, but I'm going to quickly address some of the questions the court asked. First of all, the trial court on the first go-around, before the first judgment, absolutely found causation and damages, reliance damages. It's in the judge's findings of fact conclusions of law document 304. I'm sorry, I don't know the record site. It's page 11, addressing trans versus breach of contract claim, which is the reliance damages, the court recited iWireless's arguments. And said the jury rejected iWireless's version of the story. And then proceeded to say the evidence is not so lacking as to entire iWireless to judgment as a matter of law on trans versus claim for breach of the contract. The court will deny iWireless's request to set aside the jury verdict on trans versus breach of contract claim, and proceeded to enter judgment for 11.7 million. 10 million of which was the lost profits award for wrongful termination and the 1.7 million was for the reliance damages. The court simply moved that over to one of the other claims and the 1.7, the 1.7, Judge Ho, it started out with about three, I don't have the exact math, started out with about $3 million. Christopher Martinez, the damage expert, minused out what iWireless had paid us already. Then he minused out 14% for what transverse reused and its new product, then it reduced that number. Let's see, it came down to about 2.3 million or 2.2. And the jury, in its discretion, awarded 1.7. So that's how the math works out, and I don't know why the jury reduced it further. In that discussion, Martinez cut it down to 2.3, 2.2, something like that? Bare bouts, yes, sir. He doesn't take it down to 1.7 in that discussion. No, the jury did, but it was within the range of what the jury could award. And there was plenty of evidence of the reliance damages as to what transverse spent on this project, this contract. And as we explained repeatedly in our brief, this whole argument about open TAPs, we have concrete evidence that open TAPs was finished six months before this contract was even signed. On page 43 of opposing counsel's opening brief, they say that, quote, the only place 1.7 million appears is in Martinez's assertions of how much transverse would lose in the first two years, and it provides a record site. Do you agree that that's the only place 1.7 appears in Martinez's discussion? I'm not saying that's dispositive, I'm just asking. I don't recall, Your Honor, but the damage number, the reliance damage number the jury should have awarded was to about 2.3. And perhaps the jury confused the two, just like they're confusing the two, those are two different numbers. So the jury should have awarded 2.3, but they just entered 1.7, and I never understood why. But it was within the evidence in the record. What the legal and factual basis is for the reliance damages in this record? I'm sorry, Your Honor. Can you tell us what the basis is to award reliance damages? Well, the basis is in reliance on the existence of the contract, and iWireless has promised to pay us. We entered into the contract, as the prior panel stated in its opinion, transverse could rely on a 12-year contract, which is what this contract was for. And that's how much, after the reductions I've described, that's how much transverse incurred on this project. The termination clause in the contract, I think it's section 19-something, sets out a procedure that if they wrongfully terminate, they have to pay us for the expenses we incurred on the project. They agreed to that provision, plus the law allows reliance damages. Christopher Martinez proved up the numbers. It's absolutely in there. They may disagree with it. Judge Yackel agreed with it. In my reading of the prior panel's opinion, is that the prior panel agreed with it as well. If the prior panel had found that was wrong, that was not evidence, the prior panel would have reversed and rendered. The prior panel sustained, upheld the award, but didn't enter a judgment for it. Judge Costa, you're on point on this. Didn't enter a judgment for an amount because the prior panel gave us an election of either the reliance damages, the 1.7 award that we were awarded in the trial court that the prior panel affirmed. Or whatever lost profits we could prove for the two-year period, not the 12-year period, but the two-year period. And we went down on remand and pursuant to the prior panel's decision, elected the reliance damages. And that's what the trial court entered. And they once again tried to appeal. This is the second time they've appealed the reliance damage, second time they've appealed the causation issue. The appeal should have been to the Supreme Court, not going back down and then coming back up to this court. But this is truly the second time they have argued this. Do you believe that you're entitled, your client is entitled to two years of lost profits damages if, for some reason, there's a defect in the reliance damages amount? Do I believe we would be entitled to two years lost profits? Yes. Well, I don't know, Your Honor. We didn't elect that. We elected the reliance damages because that had been upheld. But I think the, as we stated in one of our footnotes, I couldn't tell you the number at the moment. The reliance, we're not going to lose money those two years because you have to factor in, which iWireless didn't do, the money, about $450,000 that iWireless owed us for the development of their custom system, from our core belief system, and then, so they pay that $450,000, and then they start paying us during the initial two-year period. So we would have made money. The evidence in the record is that transverse would have, over the course of this whole contract, would have been paid about $37 million. I believe that was Chris Couch's testimony. The, on the, very quickly, on the question about the Iowa law, Judge Elrod, to answer your question, iWireless absolutely did not raise, as an error in the first appeal, the trial court's decision that Texas law governs the breach of contract case. You will find nowhere where they claimed error or asked this, the prior panel, to reverse. The only site they have in their brief is where they cite, I believe it's page 28, I can't, let me, the only site they have in their brief is to a statement where they say, Iowa, the two, these, it doesn't matter what law applies, because Iowa law and Texas law are the same on whatever issue they were discussing. They never say the trial court committed error, and as we discussed in our brief, when we filed this case, and they filed a motion to dismiss, Magistrate Pittman, now District Judge Pittman, ruled that the, in his recommendation, that the 19.6 provision is a mandatory provision, the 25 point whatever, beside the Iowa provision that they rely on, is permissive. It's the exact same argument they're raising now on appeal. Their argument then, as now, is that the Texas provision only governs mediation. Judge Pittman rejected that. They did not object to Judge Pittman's recommendation at all. I'll say it is preserved. I understand your argument on why it's not. It does seem a puzzle. It does seem there's some, at least on the face, tension, and we try to reconcile and give both provisions meaning. So let me throw, I don't know if the other side's argued this, but let me throw out an interpretation and hear your response to it. 25.7, the Iowa clause, says this contract shall be governed and construed by the laws of the state of Iowa, clearly talking about substantive, governing the contract, construing the contract. 19.6, the Texas provision, says the parties agree that any dispute will be submitted to mediation. Any mediation will be within the county of Travis, by the Austin Dispute Resolution Center, according to its mediation rules. And any ensuing litigation shall be conducted within said county according to Texas law. The whole thing seems, even if it's not all about mediation, seems about procedure. Here's how you're going to file it, then the mediation's going to be governed by these rules. Then you can go to court and file in that same county a lawsuit according to Texas law. Why shouldn't we read that as saying procedurally under Texas law in terms of making sure the venue's right? As you know, there's district courts in Texas, there's county courts at law. Why shouldn't we read that one as a procedural provision and the other Iowa provision as a substantive law provision? I have two answers to your question. The first answer is that that decision was already made by the magistrate and then Judge Yackel. No appeal, that's law of the case. That's the first. The second one is 19.6 says any dispute regarding the meaning, performance, or enforcement of the contract first shall be mediated. And then any ensuing litigation, any ensuing litigation, obviously concerning meaning, performance, or enforcement, which is what this case is, shall be conducted. That's the same, that's a synonym for governed, shall be conducted within said county according to Texas law. The other provision, the Iowa provision, I believe, and we argue this to the magistrate and the district judge, concerns anything other than disputes concerning meaning, performance, or enforcement. What else would that be? What means, give me an example of what you give the meaning of 25. Personal injury claims, libel claims, anything that occur on the project that don't involve meaning, performance, or enforcement of the contract. This provision 19- Personal injury claim isn't the contract, this is the contract shall be governed by the laws of Iowa. The contract, that's true, but your honor, but there are provisions in the contract that could impinge on personal injury claims, libel claims. The, that you might like what, how do you terminate the contract, things like that. If this provision, 19-6, is more specific and appears earlier than the 25.7, and under the case law that we cited, that it controls. I don't, I think you can harmonize these provisions. And I have given you an example of how they can be harmonized, but the, and should be harmonized. But even if there is a conflict under the rules of construction, the 19.6 would govern, and I, and they, they argued. It's more specific? It's more specific, meaning performance or enforcement, and it's also, it also appears earlier. We cited cases where that, where that, those rules of construction govern when you have conflicting provisions. So under either one of those, plus the fact that this is law of the case, they've waited to a second appeal. Second appeal, the court looked carefully at what they say in that footnote where they, that's the purported basis for how they raise it. They don't say a word about error or please reverse this. They didn't raise it at all. It's the second time they waived it. And I might also point out they're judicially stopped from arguing this, because after that ruling, after the district court's ruling, they filed, they got leave to amend their counterclaim, and they asserted it, what do you think they asserted? They asserted an attorney's fees claim for breach of contract. They had a counterclaim under the Texas attorney's fee statute. That was granted, all relying on the judge's rulings, which they didn't appeal. So the, the, I don't think it's proper at all for them to be raising this now. Plus, Judge Costa, I, I believe strongly that the, even if they hadn't waived it and weren't judicially stopped, I think the construction is, this is much more specific. And it deals with, with the very claims that we have in this case. Can you talk about the TTLA, attorney's fees? Yes, I'll be glad to. The, the, the, first of all, under this court's decision that was decided two years ago, Speer Marketing v. Bancorp South, the, this court held that the, if a, if the TTLA does not provide the rule of decision, and in that case it was preempted, it cannot provide the basis for an, for attorney's fees. That's exactly the situation we have here. The trial court ruled, has ruled twice, for, originally and then on remand, that the NDA governs all of these tort and breach contract claims, the NDA related ones, and that the TTLA is subsumed under the NDA. That's why we lost on our TTLA claim, because the court, that's part of why we lost, because the court found it was subsumed under the NDA. The NDA, not the TTLA, provided the rule of decision in this case. Depriving iWireless of any claim under the, under the TTLA, that's the first point. The second point is the the trial court correctly held on remand that we are the prevailing party under the TTLA. We're absolutely the prevailing party, even though we don't have a damage award. What we have is, we, we have a. A prevailing party if you don't have any damages. I'm, I'm. The court determined that you didn't provide any cognizable damages on the disclosure of the, of the UAT document. And so, you're not a prevailing party if you don't have any, if you're not damaged. I, if I may address that, Your Honor. Here's how we're, first of all, I disagree completely with the failure to award us damages on those claims. I'm just telling you what the district court said. Yes. Under the district court's own reasoning, I don't see how you can be a prevailing party. Well, the district court said we were the prevailing party on the TTLA. Right, but on the reasoning, when the court said that you provided no cognizable damage, did not provide any cognizable, I believe was the way it. Here's, here's how we are the prevailing party, among others. The, by the, the, this court's, this, the prior panel's findings, reversing and rendering in our favor on the breach of the NDA. What that established is that first of all, that transverse owned the information. Secondly, that the trans, information was confidential information under the NDA. Thirdly, well, just those two alone, what those rights, what those findings gave transverse under the NDA and the TTLA. Is that we could, can now prevent iWireless from using or disclosing that information to others, because it's our information. It's our confidential information. Per this. This was a, if you were going to have a judgment just on TTLA, what would the judgment be? That, well, we could, that we own these rights. That we own the, the, that we can enjoin them from using the information. We can enjoin them from disclosing it to other people. We also have a claim by this prior, the prior panel finding. That it appears that iWireless fabricated a breach by delaying us past the February 28th date. Under the case law, the air routing versus Britannia Airways case, Houston Court of Appeals case that we cited. If you deceive a plaintiff into paying for services that were never performed. That falls under the TTLA. That finding alone could provide the basis for a TTLA violation. We, we, the NDA, I might point out, your honor, continues. With the, with the prior panel's findings, the, we could file another lawsuit against iWireless if we needed to. Based upon the findings we have now. And, and enforce rights under the NDA and the TTLA. The test for prevailing party is whether it materially alters the legal relationship between the parties. And the prior panel's decision did do that. My time is up. If the court has any other questions, I'll be glad to answer them. Thank you. Thank you. Their TTLA claim is for theft of trade secrets. And aside from the fact there are no trade secrets, as the court can see from the record, there are no damages for that either. And the only part of their case that this court left under the non-disclosure agreement was, quote, the existence and progress of the party's dealings. The fact that they met and had these meetings. I mean, that's- There is no trade secret in this case. Correct. There's not a single piece of source code. So there's nothing that can be enjoined. Absolutely not. There's no trade, we did not find a trade secret in this case. No, you did not, and you cannot on this record, under any precedent of this court, including Globe Ranger. I do have, if you, if, if, if counsel stated at the previous oral argument that we didn't need to decide about Iowa and Texas, why isn't that, why aren't you stopped from arguing that, that that Iowa applies and that that makes a big difference now? I don't think we said that. We have consistently briefed that that contract provision controls and that Iowa law controls all aspects of the contract. We did reference it. My colleague found it at page 28, footnote 25 of our original brief. With respect to the magistrate's decision on that point, the magistrate only decided venue in Texas. The district court never held that Texas law controlled, even though they argued that. And this court specifically left the issue open. It's only relevant as it pertains to attorney's fees. The cases on sufficiency of the evidence on the different issues, it's not relevant to those, because Iowa and Texas law are sufficiently alike on those points. But it is relevant to the issue of attorney's fees, and we consistently maintain that Iowa law and that contract provision controls. Otherwise, you're violating basic contract law and reading out a very clear provision that exists in the contract. May I go back to your challenge to the 1.7? Yes, sir. I take it, and I think I've confirmed this, that you made this argument in your first appeal. Yes, sir. Yes, sir. What's your theory of what this court did? That this court didn't reach it. It just simply didn't address the sufficiency of the evidence on that issue at all. Wouldn't we ordinarily go out of our way to say we declined to address this issue? Well, if the court had actually addressed it, the proper procedure, I believe, would have been to affirm the 1.7 million. Well, we did the- And then allow them to elect. We remanded for the election, and we specifically did say that this is a quintessential case for reliance damages. Now, I agree with you that that's not the clearest language in the world. But given arguably ambiguous language and opinion, isn't it fair to assume that the court addresses all issues presented unless it specifically says otherwise? I don't think in this case, no, it is, Your Honor. Why not? Because it's entirely possible to recognize the availability of that as an appropriate remedy without affirming the underlying sufficiency of the evidence. Despite the fact that you specifically argued it. Yes. Sometimes things get punted. I agree with you. Yes. Normally when we punt, we make that clear. Yes. Do you think, so this 2.3 million is the figure Martinez throws out there for reliance, I know you say there's no causation, there's no support for it, I understand all that. Right. But assuming we think his 2.3 million was supportable, is there a basis for throwing out the 1.7 because it's not the exact number? I mean, obviously if they came out with 3.5, which was more, there'd be no support for that. But if it's less, would there be a basis for throwing that out just because it doesn't match his number? Well, the fact of the record is that there isn't anything that supports him saying that, other than he said it. Right. Your problem is with, there's no support for even the 2.3. Right. There's no support. But you're not saying that if there is 2.3, it's a problem. My point is, juries always compromise. There's a personal injury case, there's 400,000 in medical bills, and they come back and say 162,000, and no one knows where in the world that came from. Exactly, exactly. That's a pill. No, there isn't a single document in the evidence. There's no fact witness testimony that we spent this for this. I get all that. Yeah, there's no testimony that says, this part was for recreating open taps and this was for customizing it for you. There's literally no actual evidence other than Martinez saying they spent over $3 million, and no basis from which anybody can decide how he came up with that number. The only pages of his testimony on that are in record excerpt tab 26, and it's virtually non-existent. With respect to the reliance damages, and Judge Ho, your point, also, I note that they released a supersedious bond on remand. I mean, the whole remand vacated the entire judgment, and only rendered on no access to the service, and funding that we have violated the course of dealings, and the possible termination by breach. Counsel, why isn't, you mentioned the supersedious bond, that you're trying to get those premiums. Why isn't the law of the case that that's part of, that it was very, very own cost? Why isn't there- That relates to appellate costs under a different part of Rule 39. Supersedious bond costs are awarded in the district court. This court's decision in Berkeley, I think it is, adopting the Republic Tobacco case is dispositive on that issue, I believe. District court did determine that it was law of the case, right? It went off on the wrong thing there, too. He misapplies the law. He looks to the Eighth Circuit case, but this court adopted the Seventh Circuit approach in Berkeley. Okay, I think we have your argument. Thank you. Thank you.